## Case No. 7,420.

### The JOHN TAYLOR.

[6 Ben. 227.] [1]

District Court, S. D. New York. Nov., 1872. [2]

W. R. Beebe and J. C. Jackson, for libellants.

C. Van Santvoord, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the ferry-boat John S. Darcy, against the propeller John Taylor, to recover for the damages sustained by the libellants in consequence of a collision which took place between the two vessels on the 31st of October, 1867, in the Hudson river, just below the ferry slip at the foot of Desbrosses street, New York, out of which the ferry-boat had gone, on one of her regular trips to the foot of Montgomery street, Jersey City. The propeller was bound up the river. The ferry-boat blew a long blast of her steam whistle before leaving her slip, and, as the tide was strong ebb, and the wind was northwest, increasing the set down of the ebb tide, and a large steamboat was backing around the upper end of the pier

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case unreported.]

next below the ferry slip, the ferry-boat went out under a port helm, to get a good offing and not be carried down by the tide, either into dangerous proximity to the steamboat referred to, or so far down as to be below a proper point from which to reach her opposite slip in such a tide. No sooner had the ferry-boat cleared the line of the piers, than her pilot, perceiving the propeller, blew one blast of his steam whistle, to indicate that he would hold his course to the right, the propeller being then on his port hand and down the river. Receiving no response to this, he blew another single blast. To this the propeller responded by a single blast. The propeller immediately slowed, stopped, and backed her engine, and put her helm hard a-port. The ferry-boat kept on, without any change of course, and without slowing, stopping or backing. When the pilot of the ferry-boat saw that the propeller would hit him, he starboarded, and produced some change in the course of the ferry-boat before the blow, but the starboarding was in the jaws of peril and had no effect to produce the collision. The ferry-boat did not slow, stop or back till after the collision. The propeller made considerable change in her course, by her porting, towards the ferry-boat, before the blow. The stem of the propeller struck the port side of the ferry-boat, a few feet abaft her side wheel on that side, and crushed in her guard, and opened a hole in her hull so that she soon afterwards sank. The propeller had the ferry-boat on her own starboard side. The collision took place about twenty minutes past five o'clock in the afternoon. There was daylight enough for each boat to see the other.

On these facts there can be no doubt that the propeller is solely responsible for this collision. It was her duty to keep out of the way of the ferry-boat, and it was the duty of the ferry-boat to keep her course. It is insisted that the courses of the two boats were not crossing, for the reason that, if the ferry-boat had dropped down with the tide, and gone between the propeller and the New York shore, the courses of the two vessels would not have crossed each other, and that, as the ferry slip on the Jersey side was lower down the river than the slip on the New York side, the propeller had a right to suppose that the ferry-boat would take that course. The answer is, that it is shown that the course the ferry-boat took was the usual course taken on such a tide, and that she maintained it from the moment she left her slip until the collision was unavoidable. As such a course crossed the course of the propeller, if it involved risk of collision, as is shown by the result, the propeller, in discharge of her duty to keep out of the way of the ferry-boat, ought to have stopped and reversed long before she did. There would then have been no collision. It is also insisted that

the ferry-boat should have slowed, stopped and backed before she did. But she would have been in fault if she had done so, especially after the single blast in response from the propeller, which indicated that the propeller expected the ferry-boat to keep going on in the course she was on.

It was conceded by the counsel for the propeller, in argument, that, if the propeller had paid no attention to the signal from the ferry-boat, and had kept on her course without slackening her speed or porting her helm, there would have been no collision. The propeller was free to choose the means of keeping out of the way of the ferry-boat, and was not bound to port her helm, because of the single blast from the ferry-boat.

There must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by the libellant.